UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

UNITED STATES FIDELITY AND GUARANTY
COMPANY and FIDELITY AND GUARANTY
INSURANCE COMPANY,

                              Plaintiffs,               06 Civ. 15537 (CS)(GAY)

          -against-

ERIC APPELBAUM and THOMAS DAMIANI,

                              Defendants.

----------------------------------------------------------------x

## REPORT- RECOMMENDATION

TO THE HONORABLE CATHY SEIBEL, U.S. District Judge:

### I.  Procedural History

   Plaintiffs United States Fidelity and Guaranty Company ("USF&G") and

Fidelity and Guaranty Insurance Company ("FGIC") bring this action for

beach of contract by defendants Eric Appelbaum and Thomas Damiani.

Sureties USF&G and FGIC bring the claim pursuant to a Master Surety

Agreement (the "Agreement") alleged to have been signed by all parties.

Plaintiffs allege that defendants are liable for incurred losses, costs and

expenses as a result of defendants failure to satisfy their obligations to

plaintiffs pursuant to said Agreement.  Plaintiffs further contend that

defendants are liable for consultants' and attorneys' fees incurred by

plaintiffs as a result the alleged breach.

Defendant Appelbaum counterclaims that plaintiffs breached the Agreement first resulting in the losses, costs, expenses and fees for which they now make claims.  Defendant Appelbaum further counterclaims that he made a personal loan, as yet unpaid by plaintiffs, which would have off-set certain payments for which plaintiffs make claims.  Appelbaum also counterclaims against plaintiffs for a full accounting of plaintiffs' alleged damages.  Defendant Damiani cross-claims against defendant Appelbaum for fraud in connection with the Agreement.  Damiani seeks indemnification and damages from Appelbaum of the fees, costs and expenses suffered by Damiani because of this action.

The surety plaintiffs now move for summary judgment as to both liability and damage.  Plaintiffs seek judgment against defendants in the sum of $23,113,363.32 and dismissal of Appelbaum's counterclaims.  Defendants claim that material issues of fact exist as to both liability and damages.

II.  Factual Background

Defendant Thomas Damiani founded Warde Electric Contracting, Inc. ("Warde") in 1976.  Warde engaged in the business of electrical contracting. Warde undertook projects such as  railroads, bridges, and tunnels in the

2

State of New York.  Damiani was the sole shareholder of Warde until 1981,

when defendant Eric Appelbaum became his partner with each owning 50%

of the shares.  Appelbaum served as president of Warde and was

responsible for the company's financials and, at some point, also served as

chief operating officer.  Damiani served as vice president and secretary,

and also supervised the construction contracts In 1995, Warde was in

financial troubles and Appelbaum suggested to Damiani that they transfer

their shares to McCoy Glover who could garner minority contracts on behalf

of Warde.  Subsequently, Damiani and Appelbaum transferred their shares

to Glover who became the sole shareholder and president of Warde.

Damiani resigned as an officer and director of Warde, but stayed on as a

project manager and superintendent.

   In 1996, Warde applied to the surety plaintiffs for the issuance of

payment, performance and other bonds on its behalf.  Plaintiffs USF&G and

FGIC agreed to serve as sureties on said bonds.  The payment bonds

guaranteed Warde's obligations to pay its laborers, subcontractors, and

suppliers who provided labor, materials and equipment for the specific

project named in the bond.  The performance bonds guaranteed Warde's

undertakings, covenants, terms, conditions and agreements contained in

Warde's electrical construction contracts.  Defendants contend that said

contracts required Warde to pay all taxes a contractor is required to pay be

law.  Defendants assert that the surety plaintiffs were thus bound to pay

taxes withheld from Warde's employees that are to be remitted to applicable

federal, state and local taxing authoring.

On March 14, 1996, Appelbaum signed the Agreement with the plaintiffs

for said bonds.  Also signing the Agreement were Glover, as Warde's

president, Debra Macalena, as Warde's secretary, and Damiani.  However,

defendant Damiani contends that he was fraudulently induced to sign the

Agreement by defendant Appelbaum.  Said contention by Damiani is the

subject of his cross-claim against Appelbaum.

Plaintiffs set forth that the performance and payment bonds they issued

on behalf of Warde included the following:

  *    Bond No. 53012045124990, "Railworks Transit" as obligee, for the

"DOT Project";

  *    Bond No. I53012045123993, "Railworks Transit" as obligee, for the

"Jackson Project";

  *    Bond No. 53012030245983, "Metropolitan Transit Authority ("MTA")

and New York City Transit Authority for obligee, for the "AFC Project";

\*    Bond No. SC 3491, MTA as obligee, for the "Bushwick-Boerum Project";

\*    Bond No. 53012056805961, MTA as obligee, for the "Joralemon-Willow Place Project";

\*    Bond No. 53012033564982, Mass Electric Construction Co. as oblibee, for the "West End Line Project."

(Aff. of Barbara Nimmich, Vice-President of USF&G at ¶ 7).

Defendant Appelbaum contends that no bond was ever obtained by Warde for the AFC Project or issued by the surety plaintiffs on behalf of Warde.  However, the certification of Timothy G. Sndyer shows that a bond was in fact issued by the plaintiffs for said AFC Project.

(Certification of Timothy G. Snyder at Ex. A).  As a result of the issuance of the above-mentioned bonds on behalf of Warde, the surety plaintiffs allege that they sustained losses, including consultant and attorneys' fee in the sum of $23, 113, 464.32 (Nimmich Aff. At ¶ 18.

III.  Discussion

A.  Standard of Review

Summary judgment is only appropriate when there are no genuine material issues of fact and the moving party is entitled to judgment as a

matter of law.  Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986).

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and the moving

party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The

question is whether, in light of the evidence, a rational jury could find in

favor of the nonmoving party.  Gallo v. Prudential Residential Servs., Ltd.

P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

   B.  Liability

   1.  Master Surety Agreement

In summary, Paragraph III of the Master Surety Agreement at issue

herein provides that the defendants Appelbaum and Damiani shall

exonerate and indemnify the surety plaintiffs, USF&G and FGIC, from all

liability, losses, and expenses incurred by plaintiffs by reason of: (1) the

surety plaintiffs having provided bonds or (2) defendants failure to comply

with the Agreement.  Nimmich Aff. ¶ 5 and Ex. A.  Moreover, Paragraph IV

of the Agreement provides that the liability of the defendants would include

all amounts paid by the surety plaintiffs in good faith under the belief that:

(1) surety plaintiffs was or might be liable therefor; and (2) such payments

were necessary or advisable to protect any of plaintiffs rights or avoid or

lessen liability, or alleged liability.  See General Accident Insurance

Company of America v. Merritt-Meridian Construction Corp., 975 F.Supp.

511, 516 (S.D.N.Y. 1997)(payments and settlements by the surety under

the bonds must be in good faith).  Paragraph IV also provides that vouchers

or other evidence of payments sworn to by an officer of the plaintiffs shall

be prima facie evidence of the fact and extent of the liability of the

defendants.

Both defendants Appelbaum and Damiani acknowledge that they

executed the Agreement.  Appelbaum Aff. ¶ 7; Damiani Aff. ¶ 8.  However,

Appelbaum and Damiani raise certain defenses in an effort to defeat

summary judgment discussed below.

2.  The AFC Project

The plaintiffs state that they executed payment and performance bond

no. 53012030245983 on behalf of Warde.  Plaintiffs allege that said bond

named the Metropolitan Transit Authority and the New York City Transit

Authority in regard to the AFC power upgrade ("the AFC Project").

Defendant Appelbaum, however, sets forth in his affidavit that said project

was "undertaken by Warde as a completion contractor for the sureties and

as such no bond was ever obtained by Warde for this project or issued by

the Sureties on behalf of Warde."  Appelbaum Aff. ¶ 8.  In reply, plaintiffs

submit the affidavit of Timothy G. Snyder, an official in its bond claims

executive-recovery management unit.  Snyder states that the subject bond

"was issued in connection with a contract known as the USF&G Completion

Agreement for completion of the remaining work under Contract A-33715 -

AFC Power Upgrade.."  Snyder Aff. ¶ 2.  Snyder attaches a copy of the

referenced payment bond as an exhibit to his affidavit.  The affidavit does

not attach a copy of the "Completion Agreement."

The Court concludes that material issues of fact exist as to whether or

not the subject bond was in fact issued for the AFC Project on behalf of

Warde.  The copy of the payment bond attached to the Snyder affidavit

does not expressly identify the AFC power upgrade project.  The

Completion Agreement noted in the Snyder affidavit is not attached as an

exhibit.  Accordingly, it is respectfully recommended that plaintiffs' motion

for summary judgment should be denied as to this bond.

3. Railworks and the DOT /Jackson Projects

Plaintiffs declared Warde to be in default in the performance of its

obligations on the DOT Project and the Jackson Project.  Applebaum claims

that it was Railworks, not Warde, that was in breach of contract.
Applebaum Aff. ¶ 9.  Applebaum asserts that Warde had previously
declared Railworks in default under its subcontract with Warde for failure to
make payments to Warde in the approximate amount of $6,000,000 on the
above-stated projects. Applebaum asserts that plaintiffs ignored the fact
that Railworks was in default and proceeded anyway to make payments to
Railworks on the performance and payments bonds.

In response, plaintiffs claim that the issue as to which entity was in
breach was never litigated to its conclusion.  Plaintiffs also point out that
Warde's own Trustee in bankruptcy made a motion to enter into a
settlement concerning the Jackson and DOT Projects, among others.
Friedman Cert. ¶ 3; Pls. Reply Memo. of Law at 3.  Moreover, plaintiffs
further advise that the U.S. Bankruptcy Court (Hardin, B.J.) concluded that
Appelbaum's Objection that Railworks was in default and owed Warde
$6,000,000 had no merit.  Friedman Cert. ¶ 6 and Ex. B thereto.  The
Bankruptcy Judge approved a Settlement Agreement.  Id.

As previously noted,  the plaintiffs had broad authority to make payments
and settlements under Paragraph IV of the Master Surety Agreement.  Such
discretion would even extend to circumstances, as here, the indemnitors

dispute the sureties' liability to a third party.  The Court also concludes that

Appelbaum has not demonstrated any bad faith on the part of plaintiffs; or

raised a material issue of fact concerning said issue.  Accordingly, it is

respectfully recommended that the plaintiffs' motion for summary judgment

as to liability on the Jackson and DOT Projects should be granted.

4.  The Tax Obligations

Applebaum also raises as a defense his claim that plaintiffs had the

obligation to pay Warde's federal, state and local taxes pursuant to the

terms of the performance bonds.  He claims that plaintiffs failure to pay said

taxes was the principal reason Warde had to have its Chapter 11

bankruptcy proceeding converted to a Chapter 7 liquidation.  Appelbaum

Aff. ¶ 12.  He supports this claim by pointing to a letter from the U.S.

Department of Justice ("DOJ") that the surety plaintiffs received seeking

payment of taxes under the payment bonds that Warde failed to pay to the

Internal Revenue Service ("IRS").  Nimmich Aff., Ex. L. Plaintiffs advised

DOJ in a letter response that they had no liability under  the payment bonds

for the payment of Warde's tax obligations. Nimmich Aff., Ex. M.

Appelbaum argues that the plaintiffs acted in bad faith because they were

liable for the tax obligations under the performance bonds.  Appelbaum

claims that plaintiffs' bad faith in failing to pay the tax obligations under the performance bonds constitutes a breach of contract resulting in plaintiffs not being able to enforce the indemnity provisions of the Master Surety Agreement. In response to this alleged defense, plaintiffs state that IRS dropped its claims and ceased pursuing them for recovery of the payroll taxes owed by Warde.  Friedman Cert. ¶ 10.  Moreover, plaintiffs assert that Appelbaum's claims that they were obligated to pay the taxes under the performance bonds; and acted in bad faith in not doing so are unsupported and conclusory.

The relationship between the surety plaintiffs and defendants is governed by the Master Surety Agreement.  The Agreement calls for indemnification by the defendants for good faith payments made by plaintiffs pursuant to the terms of the bonds.  There are not any provisions in the Agreement that would make indemnification by the defendants unenforceable on account of the sureties not making certain payments under the bonds, i.e. taxes; assuming, *arguendo*, that the sureties were responsible for said taxes under the performance bonds.  Accordingly, it is respectfully recommended that this alleged defense should be denied.

    5.  <u>Damiani Defenses</u>

Defendant Damiani, in addition to joining in the defenses alleged by Appelbaum, raises several defenses to his liability.  First, he contends that at the time of the issuance of the bonds, he was no longer an officer, director or shareholder of Warde.  However, it is undisputed that Damiani did not terminate his liability under the Master Surety Agreement by providing the required written notice pursuant to paragraph XI(D) f the Agreement.  Although Damiani states that he did orally advise an agent of the surety that he was no longer a principal or officer of Warde, said statement would not be in compliance with the Agreement.  Thus, Damiani would remain liable under its terms.

Damiani also alleges that the signature of his wife, Barbara Damiani, is forged on the Agreement; the witness who is set forth on the Agreement was not in the room when he signed; the date of his signature was altered; Appelbaum's wife did not sign the Agreement; and that he has no assets with which to pay any judgment which might be awarded.  It is respectfully recommended that said defenses should be denied.  The alleged forgery of Barbara Damiani's signature would not effect the liability of defendant Thomas Damiani.  Paragraph XII of the Agreement provides that "In the event that the execution of this AGREEMENT by any one or more the

UNDERSIGNED is defective or invalid for any reason, such defect or invalidity shall no effect upon the validity of this AGREEMENT as to any other UNDERSIGNED."  As concerns the alleged irregularities as to the date that the Agreement was signed, said irregularity would also not effect the validity of the Agreement as it undisputed that defendant Damiani did in fact execute it.  Likewise, the absence of the signature of Claudia Appelbaum on the Agreement does not affect the liability of defendant Damiani.  There is no express provision in the Agreement making it unenforceable if any of the intended signatories does not sign.  Also, that fact that defendant Damiani may not have any assets to pay any judgment against him is no defense to this summary judgment motion.

   Accordingly, it is respectfully recommended  that said defenses to the summary judgment motion raised by defendant Damiani should be denied

   6.  Appelbaum's Counterclaim For Damages

   Summary judgment should also be granted in favor of the plaintiffs on their motion for summary judgment concerning Appelbaum's counterclaim against them.  There is no language in the Master Surety Agreement, which controls the relationship between Appelbaum and the surety plaintiffs, that would permit the claim for damages set forth in the counterclaim.

Accordingly, it is respectfully recommended that summary judgment should be granted dismissing the counterclaim.

C.  Damages

Plaintiffs also seek summary judgment on the issue of damages. Paragraph IV of the Master Surety Agreement provides that the voucher(s) or other evidence of such payment(s) or an itemized statement of payment(s) sworn to by an officer of SURETY shall be prima facie evidence of the fact and extent of the Liability of UNDERSIGNED to SURETY." Here, the Nimmich Aff. includes as exhibits itemizations of payments made on the various bonds and projects.  Exhibits B-G.  The itemizations include the claim numbers, check numbers, check issued, check presented, loss payments, expense, and payee.  Said itemizations do not provide any details as to the nature and reasons for the payments.  In addition to contesting liability, as set forth above, Appelbaum has also counterclaimed for a full accounting of the sums expended by plaintiffs in connection with the alleged work they performed for or on behalf of Warde.  Plaintiffs contend that such accounting has been provided through discovery and by the Nimmich affirmation.

The undersigned respectfully recommends that summary judgment be

denied on the issue of damages.  Plaintiffs should be required to prove their

damages at trial with competent proof; particularly given the existence of

issues such as whether or not plaintiffs should be limited to the penal sum

of the bonds, the issues surrounding the AFC Project, and issues

concerning the reasonableness of the payments.

## CONCLUSION

It is respectfully recommended that summary judgment should be

granted as to liability on all the bonds and projects, with the exception of the

AFC Project.  Summary judgment should be denied on the issue of

damages.  Summary judgment should be granted dismissing the

counterclaim for damages brought by defendant Appelbaum.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(B), as amended, and Rule 72(b),

Fed.R.Civ.P., the parties shall have ten (10) days from receipt of the Report

to serve and file written objections to this Report and Recommendation.  If

copies of this Report are served upon the parties by mail, the parties shall

have thirteen (13) days from receipt of this Report to file and serve written

objections.  See Fed.R.Civ.P. 6(d).  Such objections, if any, shall be filed

with the Clerk of the Court, with extra copies delivered to the chambers of

with the Clerk of the Court, with extra copies delivered to the chambers of

The Honorable Cathy Seibel at the United States District Court, Southern

District of New York, 300 Quarropas Street, White Plains, New York, 10601,

and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will

preclude later appellate review of any order or judgment that will be

entered.  See Caldor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the

Honorable Cathy Seibel and not to the undersigned.


Dated: February 25 ,2009
White Plains, New York                    Respectfully Submitted,

                                          GEORGE A. YANTHIS, U.S.M.J.


16